NOTICE

Decision filed 09/22/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 170416-U

NOS. 5-17-0416, 5-17-0417 (consolidated)

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | Nos. 14-CF-2665 & 14-CF-2675 |
| | ) | |
| BRIAN BARKER, | ) | Honorable |
| | ) | Richard L. Tognarelli, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court.
Presiding Justice Welch and Justice Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's denial of the defendant's motion to withdraw guilty plea is affirmed where the defendant was unable to establish that he was denied due process at his sentencing hearing.

¶ 2    Pursuant to a negotiated guilty plea, the defendant, Brian Barker, pled guilty to numerous theft-related offenses and was sentenced to serve an aggregate 40-year term of imprisonment on his resulting convictions. He subsequently filed a motion to withdraw his guilty plea and a motion to reconsider his sentence, both of which were denied following a hearing. On appeal, raising numerous claims that he contends we should review under the doctrine of plain error, the defendant argues that he was denied due process during his sentencing hearing because of the trial court's reliance on improper sentencing considerations. Conceding that a new sentencing hearing is not an available option (see *People v. Johnson*, 2019 IL 122956; *People v. Richard*,

1

2012 IL App (5th) 100302), the defendant argues that he should be allowed to withdraw his guilty plea. The defendant is unable to demonstrate plain error, however, and we accordingly affirm the trial court's judgment.

¶ 3                                BACKGROUND

¶ 4     The defendant was an Edwardsville police officer for nearly 19 years. On the evening of December 21, 2014, while on duty and in full uniform, he unlawfully entered a hair salon in Edwardsville and was caught on a surveillance camera stealing money from a cash register. After the owner of the salon reported the crime to the Edwardsville Police Department, the department conducted a cursory investigation before turning the matter over to the Madison County Sheriff's Office and placing the defendant on unpaid administrative leave.

¶ 5     On December 23, 2014, in Madison County case number 14-CF-2665, the defendant was arrested, jailed, and charged with one count of burglary (720 ILCS 5/19-1(a) (West 2014)) and one count of official misconduct (*id.* § 33-3(b)). The charges stemmed from the theft at the hair salon, which during an initial post-arrest interview, the defendant repeatedly denied committing until he was advised that there was a video that had "captured the act." When the defendant's home in Prairietown was subsequently searched, items of stolen property connecting him to numerous unsolved burglaries and thefts were discovered.

¶ 6     On December 24, 2014, the defendant was interviewed again and was specifically asked if he had committed any residential burglaries in the neighborhood where he had previously lived with his ex-wife. The defendant initially denied having done so, but when advised that proceeds from previously reported burglaries in the neighborhood had been found inside his house, he admitted that he had. The defendant further admitted that he had entered the neighboring homes when he knew the occupants were out of town. The defendant similarly denied burglarizing

2

several named businesses in Edwardsville, including three law firms, before confessing to the crimes after being advised that stolen items from the break-ins had also been found inside his house. When the defendant was asked why he had committed the crimes, he primarily indicated that "he didn't know," but he also referenced "drinking heavily" and "being strapped for money."

¶ 7    On December 25, 2014, the defendant's girlfriend gave investigators consent to search her home in Bethalto. During the course of the search, what was subsequently described as "a Walmart" of stolen merchandise was found in the basement. Firearms, silver coins and bars, neon lights, tools, stamps, currency, hundreds of unboxed mufflers, and a state's attorney's office badge were among the items discovered. Many of the items were later linked to business burglaries that had been reported in Madison County over the years. Meanwhile, the defendant was released from custody after posting 10% of his cash bond.

¶ 8    On December 26, 2014, in Madison County case number 14-CF-2675, the defendant was arrested, jailed, and charged with 10 counts of burglary (counts III-XII) (720 ILCS 5/19-1(a) (West 2014)), one count of residential burglary (count II) (*id.* § 19-3(a)), and one count of aggravated possession of seven stolen firearms (count I) (*id.* § 24-3.9(a)(2)). The charges stemmed from the admissions the defendant made during his second interview and the corresponding evidence discovered at his home in Prairietown. The defendant was subsequently released from custody after again posting 10% of his cash bond.

¶ 9    From December 27, 2014, through December 29, 2014, investigators continued to review "old reports" of unsolved burglaries and thefts that had been committed in Madison County. As the lead investigator later explained, researching the reports proved time consuming given the "incredible amount of evidence that [the investigators] had to go through."

3

¶ 10    On December 30, 2014, investigators removed "truckloads" of evidence from the basement of the defendant's girlfriend's house. Sometime thereafter, the defendant's girlfriend turned over a storage tub containing cash and jewelry that had not been previously been discovered.

¶ 11    On December 31, 2014, investigators searched the defendant's ex-wife's house in Moro. In the basement of her home, additional items of interest, including tools, signs, and neon lights were found.

¶ 12    In February 2015, in Madison County case number 15-CF-285, the defendant was arrested, jailed, and charged with offenses unrelated to the present appeal. In April 2015, the defendant resigned from his position with the Edwardsville Police Department. In May 2015, the defendant was released from custody on the charges in 15-CF-285 after posting 10% of his cash bond.

¶ 13    Following his release from jail, the defendant and his girlfriend became active in a local church. They married in September 2015 and had a child together in February 2016. The record indicates that the defendant commenced working for a construction company in July 2016. In August 2016, the defendant began receiving psychological counseling on a weekly basis from Dr. Daniel Cuneo, Ph.D.

¶ 14    On January 30, 2017, the defendant entered into a negotiated plea agreement with the State. Pursuant to the terms of the agreement, in exchange for the defendant's plea of guilty to both charges in 14-CF-2665 and counts I, II, V, and VI in 14-CF-2675, the State agreed to dismiss the remaining counts in 14-CF-2675 and recommend a 40-year sentencing cap at a subsequent hearing. The defendant also agreed to later assist in the State's efforts to return the items of stolen property found during the investigation to their rightful owners.

4

¶ 15     Before accepting the defendant's guilty plea, the trial court admonished him, *inter alia*, that absent the parties' negotiated plea agreement, he faced the possible imposition of an extended-term sentence of "up to 60 years in the Illinois Department of Corrections." The court then advised that it would bind itself to the agreement and that the defendant would thus receive a sentence of "up to 40 years." After the defendant specifically acknowledged that he would later receive a sentence of up to 40 years, the trial court accepted his plea, entered judgment on the resulting convictions, and ordered the preparation of a presentence investigation report.

¶ 16     In March 2017, pursuant to the parties' negotiated agreement, the defendant helped identify the origins of the recovered property that remained unaccounted for. The defendant also voluntarily returned other items that had not been previously reported as stolen.

¶ 17     On June 26, 2017, the cause proceeded to a sentencing hearing, where the State presented a detailed account of the investigation into the defendant's crimes. The State's evidence included photographs that were admitted as exhibits, many of which were close-up pictures of various items of stolen property.

¶ 18     Detective Kris Tharp of the Madison County Sheriff's Office testified that he was the lead investigator in the case and that an enormous amount of manpower and resources were expended during the months-long investigation. Tharp further testified that the investigation revealed that the defendant had been committing burglaries in Madison County for at least 15 years. Tharp stated that a total of 9 residential burglaries and "[w]ell over 30" business burglaries were ultimately connected to the defendant. Tharp noted that the defendant had stolen money and guitars from a church in Edwardsville on at least two separate occasions and had confessed to having done so.

¶ 19    Officer Bryan Bauer of the Madison County Sheriff's Office testified that he had processed the evidence that had been discovered during the course of the investigation. Bauer explained that a "10 by 10 storage pod" had to be obtained because the office's evidence vault was not large enough to store it all. Bauer testified that a total of nine stolen firearms were recovered, one of which was found in the defendant's pickup truck and seven of which were found in a safe in the basement of the defendant's girlfriend's house. Bauer explained that proceeds from numerous burglaries in the Edwardsville area had been discovered, and referencing several of the photographic exhibits, he identified specific items that had been reported stolen from specific businesses. Bauer estimated that thousands of items of stolen property had ultimately been recovered. Bauer testified that much of the property was found neatly organized in storage tubs or on shelves and that most of the commercial items had not been removed from their original packaging.

¶ 20    Detective Sergeant Mike Lybarger of the Edwardsville Police Department testified that as a result of the defendant's crimes, patrol officers with the department were reticent to conduct "business checks" out of fear that they might be falsely accused of malfeasance. Lybarger further indicated that the defendant's conduct had led to feelings of anger and betrayal that had negatively affected officer morale. Lybarger advised that after the defendant's initial arrest, the department's detective division had "basically shut down" for a week while it assisted in the investigation. Lybarger testified that from 2009 through 2014, the department received an average of 24 reports of business burglaries per year, but since the defendant's arrest, the number had fallen to 6.

¶ 21    Cynthia Van Patten, the owner of the hair salon that the defendant was caught burglarizing on December 21, 2014, read a victim impact statement in which she described the

defendant as "basically a career criminal disguised as a police officer." Van Patten noted that before the defendant was caught, he had burglarized her business on other occasions, and he and other officers had convinced her that the thief was likely a former employee who knew the salon's alarm code. Van Patten explained that she subsequently grew paranoid and distrustful and once accused an employee of stealing property that the defendant had actually stolen. She further explained that the situation had strained her relationship with her staff, which ultimately affected her business.

¶ 22   Van Patten testified that after the defendant was arrested and released on bond, she had difficulties sleeping because she "felt like [she] was in serious danger." She also felt like she had done something wrong by reporting what had happened. Van Patten explained that she had a brother who was a police officer and that she had always had a great deal of respect for the police. "Unfortunately," she added, her "feelings [had] changed forever." Van Patten testified that although she had been operating her salon in Edwardsville for over 20 years, the defendant's conduct had led her to sell her building at a $50,000 loss and move her business to Glen Carbon "so that [she] could feel like [she] had police protection."

¶ 23   As a witness for the defense, Dr. Cuneo testified that after completing an initial evaluation, he had met with the defendant approximately 40 times without charge since August 2016. Cuneo testified that the defendant had a history of alcohol abuse and suffered from kleptomania, persistent-depressive disorder, and obsessive-compulsive disorder. Cuneo explained that the defendant's problems had a significant influence on his criminal conduct and could be traced back to an extremely traumatic childhood. Cuneo suggested that the defendant's crimes were motivated by obsession and a sense of excitement, as opposed to financial gain.

7

Cuneo explained that the defendant's cycle of kleptomania was similar to that of most addictive behaviors and that the defendant's use of alcohol further decreased his judgment.

¶ 24    Cuneo indicated that through counseling and religion, the defendant had gained insight into his criminal behavior and had appeared to have genuinely changed. Acknowledging that he is "very cynical when somebody finds God in prison," Cuneo believed that the defendant's new-found faith was sincere and filled a void in the defendant's life. Cuneo opined that the defendant had good rehabilitative potential and would be unlikely to reoffend in the future if he abstained from alcohol, continued therapeutic treatment, and maintained his relationship with his church. Cuneo conversely opined that if the defendant failed to do those things, then his potential to reoffend would be high. Cuneo testified that although the defendant clearly had the ability to appreciate the criminality of his conduct, his crimes were generally undeterrable given that "he could not stop himself." Cuneo noted that the defendant had reportedly not consumed alcohol since December 2014 and had recently been prescribed an anti-anxiety medication. Cuneo recommended that the defendant be imprisoned in an institution that offered drug and alcohol treatment.

¶ 25    Mark Church testified that he was the head pastor at the defendant's church. Church testified that although the defendant was "pretty shy" when he first started attending, he had since completed a series of spiritual growth classes and had participated in numerous volunteer opportunities. Church testified that he was aware of the defendant's situation and believed that the defendant had sincerely changed. Church testified that he and his wife had allowed the defendant to do maintenance work at their home while they were away and had felt comfortable doing so.

¶ 26 Darwin Bryant testified that he was the prison ministry pastor at the defendant's church and had met the defendant through an outreach support group. Bryant testified that he had previously spent time in prison and had since dedicated his life to "helping those in similar situations." Bryant testified that the defendant's extensive volunteer work for the church had benefitted numerous people in the community and that he and the defendant had become close friends while working and worshipping together. Opining that he could not "even fathom [the defendant] reoffending again," Bryant opined that the defendant had clearly and sincerely changed.

¶ 27 In its argument in aggravation, the State maintained that consecutive sentences totaling 40 years were appropriate under the circumstances. The State argued that the defendant had damaged the reputation of all law enforcement officers in Madison County and had broken the public's eroding trust in the police. The State contended that because the defendant had engaged in criminal activity as a police officer for so many years, the "good ones" were "going to have to deal with [the fallout] for a very long time." The State argued that the defendant had taken advantage of his position as a police officer and that the law enforcement community deserved and demanded that a hefty sentence be imposed.

¶ 28 Noting that the defendant had been armed during the commission of his crimes, the State argued that it was a "miracle" that no one was seriously injured or killed over the course of the defendant's "15-year crime spree." The State maintained that the following statutory factors in aggravation applied: (1) the defendant's conduct threatened or caused serious harm; (4) the defendant, by the duties of his office or by his position, was obligated to prevent the particular offenses committed or to bring the offenders committing it to justice; (5) the defendant held "public office" when the offenses were committed, and the offenses related to the conduct of that

office; (6) the defendant utilized his professional position in the community to commit the crimes; (7) the sentence was necessary to deter others from committing the same crimes; and (11) the offenses took place in a place of worship. 730 ILCS 5/5-5-3.2(a)(1), (4)-(7), (11) (West 2014). Arguing that deterrence was a vital factor, the State suggested that the court needed to assure the public that police officers can be trusted and relied upon.

¶ 29    In response, the defendant argued that although he had violated the public's trust on numerous occasions, an eight-year sentence with additional restitution to the victims would be a just disposition. Referencing Cuneo's testimony, the defendant maintained that his criminal conduct had been driven by his psychological problems and alcohol abuse, both of which he was actively addressing. The defendant noted that the testimony that he had genuinely changed and was unlikely to reoffend was unrebutted. Further noting that law enforcement personnel "make the same bad judgments and engage in some of the same bad conduct as everyone else," the defendant should not have to "take the blame" for the highly publicized incidents of police misconduct that had occurred in other jurisdictions in recent years.

¶ 30    Conceding that the six statutory factors that the State cited were applicable, the defendant opined that his professional obligation to prevent the offenses that he had committed was "the most aggravating." The defendant argued that the State's official misconduct charge adequately took his public position into account, however, and that he should not be treated more harshly merely because he was a police officer or "an official." Observing that his conduct was unlike that of a "typical" burglar or thief, the defendant suggested that while applicable, deterrence would serve no logical or meaningful purpose, given that his "bizarre behavior" stemmed from his kleptomania, which could be treated but not deterred. The defendant argued that the

10

imposition of consecutive sentences was not warranted because the evidence did not support a finding that consecutive sentences were necessary to protect the public.

¶ 31 In rebuttal, the State argued that contrary to the defendant's contentions, the relevance of his position as a police officer was not limited to the official misconduct charge. The State further argued that the defendant had been given a "gift" when he was allowed to plead guilty "to just these offenses." Regarding rehabilitation, the State emphasized that the defendant had engaged in a pattern of criminal conduct for 15 years and had made no efforts to correct himself until "after he got caught." The State also noted that Cuneo testified that the defendant's potential to reoffend was dependent on whether the defendant abstained from alcohol and maintained a support system. The State argued that the evidence supported a finding that consecutive sentences were necessary to protect the public and again asked the court to impose an aggregate sentence of 40 years. The State noted that the defendant would be entitled to "day-for-day" credit towards the term.

¶ 32 In allocution, the defendant apologized for what he had done and acknowledged that he had disrespected and disgraced everyone he knew. The defendant further acknowledged that his actions were reckless and selfish. The defendant explained that prior to seeing Dr. Cuneo, he lacked insight into what had motivated his behavior. The defendant stated that he had previously tried to stop drinking and stealing but had "always resorted back to the same actions." The defendant indicated that his church had saved him and that he was now "on the right path." The defendant hoped that all the people he hurt would one day forgive him.

¶ 33 Before pronouncing sentence, the trial court stated that it had considered, *inter alia*, the parties' evidence and arguments and the defendant's presentence investigation report. Stating that it had never "seen anything like this," the court indicated that it agreed that the defendant's

11

behavior was so "bizarre" that "no sentence would be sufficient to deter" his conduct. The court also indicated that while it might generally concede that the defendant should not receive a harsher sentence merely because he was a police officer, the defendant owed a duty to each and every one of his victims, and the public needed to know that it could trust the police. The court noted that it had done "a little research" that had revealed that "even in 2017," the profession of police officer was number 6 on the list of top 10 most trusted professions in the country.

¶ 34 Stating that the defendant had broken the public's trust in ways the court had never seen, the court agreed that his violation of his obligation to prevent the offenses that he committed was the most significant aggravating factor. Referencing the photographs of the stolen property that had been recovered during the course of the investigation, the court noted that the defendant had victimized numerous individuals and businesses over the years. The court further stated that the defendant's conduct could have caused serious harm. The court indicated that it was "concerned" with Cuneo's testimony because his assessment of the defendant's rehabilitative potential included too many "ifs."

¶ 35 The trial court ultimately imposed five-year sentences on both of the defendant's convictions in 14-CF-2665. In 14-CF-2675, the court imposed 10-year sentences on the defendant's convictions on counts I and II and 5-year sentences on his convictions on counts V and VI. Opining that given the nature and circumstances of the offenses and the defendant's history and character, consecutive sentences were required to protect the public from further criminal conduct by the defendant, the court ordered that the defendant's terms be served consecutively. See 730 ILCS 5/5-8-4(c)(1) (West 2014). The court recommended that the defendant be imprisoned in a facility that offered drug and alcohol treatment. The court advised

the defendant that if he wished to file a motion to withdraw his guilty plea, he had 30 days in which to do so. See Ill. S. Ct. R. 605(c) (eff. Oct. 1, 2001).

¶ 36    On July 25, 2017, the defendant filed a motion to withdraw guilty plea and a motion to reconsider sentence. The defendant's motion to reconsider argued that the trial court erred in imposing consecutive sentences on his convictions. The defendant's motion to withdraw guilty plea alleged that the trial court failed to properly admonish him that he was subject to consecutive sentences and that the consecutive sentences the court imposed were not authorized by law.

¶ 37    On October 27, 2017, at a hearing on the defendant's postplea motions, the defendant acknowledged that both motions were directed at the trial court's imposition of consecutive sentences. The defendant argued that although his aggregate sentence was within the negotiated cap of 40 years, the facts of his case did not warrant consecutive sentences, and he was not properly admonished that he might receive them. The defendant asked the court to either vacate his guilty plea or, in the alternative, order that his sentences be served concurrently.

¶ 38    In response, the State objected to both of the defendant's requests. Arguing that the trial court did not abuse its discretion in imposing consecutive sentences under the circumstances, the State emphasized that the defendant's total sentence did not exceed the parties' negotiated cap.

¶ 39    When denying both of the defendant's postplea motions, the trial court stated that a 40-year sentence was "appropriate" and was within the negotiated cap. The court further stated that the record reflected the basis for its discretionary decision to sentence the defendant to consecutive sentences. Although the trial court did not specifically address the defendant's contention that he had not been properly admonished, we note that the court rightly rejected that claim. See *People v. Baker*, 133 Ill. App. 3d 620, 622 (1985) (holding that the failure to advise as

13

to the possibility of consecutive sentence was harmless where the defendant was aware of the actual aggregate sentence he was eligible to receive). On October 31, 2017, the defendant filed a timely notice of appeal.

¶ 40                                    DISCUSSION

¶ 41    As previously noted, the defendant argues that he was denied due process at his sentencing hearing because the trial court relied on improper sentencing considerations. The defendant specifically complains that the trial court should not have considered four of the six statutory factors in aggravation that the State argued were applicable, that the court improperly relied on its own research and opinions of the defendant's crimes, and that the court further relied on unreliable evidence that the defendant had committed offenses in addition to those that were specifically charged. The defendant also argues that the trial court failed to fully appreciate Cuneo's expert testimony. The defendant maintains that he should be allowed to withdraw his guilty plea as a result of these alleged errors. Acknowledging that he raises his due process claim for the first time on appeal, the defendant seeks plain-error review of his underlying arguments.

¶ 42    Generally, any issue not raised by a defendant in his motion to withdraw guilty plea is deemed waived on appeal. *People v. Davis*, 145 Ill. 2d 240, 250 (1991). Under the plain-error doctrine, however, plain errors affecting substantial rights are cognizable despite a defendant's waiver. *People v. Smith*, 183 Ill. 2d 425, 430 (1998). The plain-error doctrine "is a narrow and limited exception to the general rule of forfeiture, whose purpose is to protect the rights of the defendant and the integrity and reputation of the judicial process." *People v. Allen*, 222 Ill. 2d 340, 353 (2006). Under the plain-error doctrine, the defendant bears the burden of persuasion. *People v. Sargent*, 239 Ill. 2d 166, 190 (2010).

14

¶ 43    Our supreme court has recognized that a sentence based on "materially false information" can result in a violation of due process (*People v. Harden*, 113 Ill. 2d 14, 20 (1986)), as can a sentence based on " 'a private investigation by the court or based upon private knowledge of the court, untested by cross-examination' " (*People v. Dameron*, 196 Ill. 2d 156, 171 (2001) (quoting *People v. Wallenberg*, 24 Ill. 2d 350, 354 (1962)). In either instance, however, to establish plain error, a defendant must demonstrate that the errors he alleges were so egregious that he was denied a fair sentencing hearing. *People v. Hall*, 195 Ill. 2d 1, 18 (2000). Moreover, the first step in conducting any plain-error analysis is to determine whether error occurred at all. *People v. Walker*, 232 Ill. 2d 113, 124 (2009).

¶ 44    Here, assuming *arguendo* that a defendant may seek to withdraw his guilty plea on grounds that he was denied due process at a sentencing hearing that resulted in the imposition of a sentence that fell within a negotiated cap (see *People v. Linder*, 186 Ill. 2d 67, 74 (1999) (noting that a defendant who agrees to a potential sentencing range assumes a "risk" that he "may not like the sentencing court's ultimate disposition"); *People v. Robinson*, 157 Ill. App. 3d 622, 631 (1987) (noting that a defendant's "hope for a more lenient sentence does not provide the basis for allowing the withdrawal of his guilty plea")), we find that the arguments the defendant advances in support of his due process claim are ultimately without merit.

¶ 45                          Research and Personal Opinions

¶ 46    The defendant first argues that when imposing sentence, the trial court "relied heavily" on its own research and personal opinions of the defendant's crimes. The defendant bases this claim on the trial court's observations that the defendant's conduct was novel and "bizarre" and the court's revelation that it had done "a little research" revealing that "even in 2017," the profession of police officer was among the top 10 most trusted professions. These remarks must

15

be considered in context rather than isolation, however (see *People v. Ward*, 113 Ill. 2d 516, 526-27 (1986)), and when so considered, they do not support the defendant's contentions of error.

¶ 47    As previously indicated, when asking that a 40-year sentence be imposed on the defendant's convictions, the State argued, *inter alia*, that the defendant had broken the public's eroding trust in the police and had damaged the reputation of all law enforcement officers in Madison County. The State suggested that a lengthy sentence was necessary to mitigate that damage and assure the public that the police could be trusted. Agreeing with these sentiments, the trial court concluded that the defendant's violation of his obligation to prevent the offenses he committed was the most significant aggravating factor. See 730 ILCS 5/5-5-3.2(a)(4) (West 2014). The court further stated that the defendant owed a duty to each and every one of his victims and that the public needed to know that it could trust the police. Contrary to the defendant's intimations on appeal, however, nothing suggests that the court would not have arrived at these conclusions in the absence of the "little research" it conducted or that the court improperly relied upon the same. *Cf. People v. Cervantes*, 2014 IL App (3d) 120745, ¶ 46 (holding that the trial court improperly relied on its own research where it sentenced the defendant based solely on life expectancy statistics that neither party had asked the court to consider); see also *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 135 (noting that in *Dameron*, the trial court "spoke at length about social science statistics and the court's own generalizations about crime that [it] discovered in a treatise through its own investigation"). In context, the court's remarks regarding its independent research were passing observations that were ultimately inconsequential. See *People v. Rippatoe*, 408 Ill. App. 3d 1061, 1069 (2011) ("Although a judge errs in considering facts outside the record, that error is harmless when a reviewing court can safely conclude that consideration of the facts outside the record did not

16

affect the result."). The trial court also agreed with counsel's characterization of the defendant's behavior as "bizarre" and indicated that it had never seen a similar case. These were mere observations, however, and nothing suggests that the court improperly based its sentencing decision on its personal opinions of the defendant's crimes, as opposed to the evidence and arguments that were presented for its consideration. *Cf. People v. Romero*, 2015 IL App (1st) 140205, ¶ 32 (finding that the trial court arguably relied on its own opinion of the defendant's crime when imposing sentence where the court's comments indicated that it had "considered a level of intent and conduct for which [the] defendant [had been] acquitted"); *People v. Henry*, 254 Ill. App. 3d 899, 905 (1993) (finding that the trial court relied on its own opinion of the defendant's crime when imposing sentence where the court referred to the crime as " 'disgusting' " and advised the defendant " 'that's why you are given this amount of time' ").

¶ 48                                    Dr. Cuneo's Testimony

¶ 49    The defendant argues that the trial court either failed to properly consider Cuneo's testimony or failed to completely understand it. The defendant seemingly bases this claim on the fact that the trial court agreed with Cuneo's suggestion that the defendant's conduct could not be specifically deterred but then rejected Cuneo's testimony regarding the defendant's rehabilitative potential. The defendant suggests that this alleged error constitutes further proof that the 40-year sentence the trial court imposed was improperly based on its own opinions and research. We disagree.

¶ 50    The trial court was free to accept or reject Cuneo's testimony in whole or in part (*People v. Tara*, 367 Ill. App. 3d 479, 489 (2006)), and when discussing his expert opinions, the court explained that it was concerned that his assessment of the defendant's rehabilitative potential included too many "ifs." Furthermore, the trial court's concession that the defendant's conduct

17

was likely undeterrable given its psychological underpinnings was consistent with the court's determination that consecutive sentences were necessary to protect the public and was irrelevant with respect to the court's finding that a lengthy sentence was necessary to deter others. See *People v. Huddleston*, 212 Ill. 2d 107, 140 (2004) (recognizing the distinction between specific and general deterrence). Ultimately, as the State observes on appeal, the defendant takes the trial court's statements regarding Cuneo's testimony out of context and is unable to demonstrate error.

¶ 51                                 Aggravating Factors

¶ 52    The defendant next argues that the trial court should not have considered four of the six statutory factors in aggravation that the State argued were applicable to the facts of his case. As previously noted, however, at the sentencing hearing, the defendant conceded that all six of the factors were applicable. As a result, under principles of affirmative waiver and invited error, plain-error review of the defendant's claim that the court should not have considered four of the factors is not available. See *People v. Smith*, 2019 IL App (1st) 161246, ¶ 51; *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17; see also *In re Detention of Swope*, 213 Ill. 2d 210, 218 (2004) (holding that where a party actively participates in the direction of the proceedings, the party's actions go beyond mere waiver and "the traditional exceptions to the waiver rule do not apply"). Moreover, even assuming otherwise, we would conclude that the defendant's underlying arguments are without merit.

¶ 53    Citing *People v. Warwick*, 123 Ill. App. 3d 692 (1984), the defendant first maintains that the trial court erred in considering the statutory aggravating factors enumerated as (1), (4), and (5), *i.e.*, (1) that his conduct threatened or caused serious harm, (4) that by the duties of his office or by his position, he was obligated to prevent the particular offenses committed or to bring the

18

offenders committing it to justice, and (5) that he held "public office" when the offenses were committed, and the offenses related to the conduct of that office. 730 ILCS 5/5-5-3.2(a)(1), (4), (5) (West 2014).

¶ 54    In *Warwick*, the reviewing court held that the trial court erred in considering factors (1), (4), and (5) when sentencing a police officer to a three-year term of imprisonment on his conviction for official misconduct. *Warwick*, 123 Ill. App. 3d at 693, 695-98. With respect to factor (1), the court found that there was no evidence that the defendant's criminal acts had caused or threatened "serious physical and/or psychological harm" to any specific person, as opposed to the harm that resulted to "society at large." *Id*. at 696-97. The court held that factor (4) was inapplicable because it was implicit in the offense of official misconduct and that factor (5) "may also have been improperly applied" because it was "not clear from the record whether the defendant held public office" or was otherwise a "public officer." *Id*. at 697-98.

¶ 55    *Warwick* is distinguishable. Here, with respect to factor (1), the trial court could have fairly considered Van Patten's testimony as evidence that the defendant's conduct had caused or threatened serious psychological harm to her and could have fairly considered Lybarger's testimony as evidence that the defendant's conduct had caused or threatened serious psychological harm to the rank and file of the Edwardsville Police Department. Moreover, with respect to the threat of physical harm, the defendant committed burglaries as an armed police officer, and the trial court apparently agreed with the State's assertion that it was a "miracle" that no one was seriously injured or killed during what the State referred to as the defendant's "15-year crime spree." Regarding factor (4), although that factor was implicit in the charge of official misconduct, it was not implicit in the other charges to which the defendant pled guilty and was thus properly considerable as to those charges. Regarding factor (5), as previously indicated, the

19

defendant generally conceded that it was applicable and specifically conceded that he was "an official." The defendant is thus estopped from now claiming that he was a mere "public employee." See *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) (noting that invited error is akin to estoppel). Moreover, the defendant's concessions aside, we cannot conclude that the State would have been unable to establish that he held a "public office" had it been required to do so. See 65 ILCS 5/10-2.1-4 (West 2014) ("The board of fire and police commissioners shall appoint all officers and members of the fire and police departments ***."); 720 ILCS 5/2-18 (West 2014) (" 'Public officer' means a person who is elected to office pursuant to statute, or who is appointed to an office which is established, and the qualifications and duties of which are prescribed, by statute, to discharge a public duty for the State or any of its political subdivisions."); *Village of Round Lake Beach v. Brenner*, 107 Ill. App. 3d 1, 4 (1982) (noting that by statute and ordinance, any full-time member of the village's police department was a " 'city officer' " of a municipal public office); *cf. Warwick*, 123 Ill. App. 3d at 698 (finding that factor (5) did not apply where there was not a "proper finding" that the police officer held "public office" at the time of the offense).

¶ 56    The defendant lastly argues that the trial court erred in considering statutory factor (11) because although there was evidence that he had burglarized a church on at least two separate occasions, there was no evidence that the crimes took place "immediately prior to, during[,] or immediately following worship services," as the statutory language requires. 730 ILCS 5/5-5-3.2(a)(11) (West 2014). Again, however, the defendant conceded that this factor applied, and he is now precluded from claiming that the trial court should not have considered it. Moreover, to the extent that the factor might have been wrongly applied in a technical sense, the trial court's consideration of the fact that the defendant had repeatedly stolen from a church did not implicate

the defendant's right to due process. A trial court is free to consider aggravating factors that are not specifically set forth in the statute (see, *e.g.*, *People v. Allen*, 119 Ill. App. 3d 845, 846 (1983)), and the evidence that the defendant had repeatedly burglarized the church was not based on false information; it was based on the defendant's corroborated confessions. As a result, any purported error was only committed insofar as the underlying facts did not precisely "line up" with the statutory language. *People v. Rademacher*, 2016 IL App (3d) 130881, ¶ 38. "In other words, but for the existence of that statute, there could be no claim of error." *Id.* Furthermore, even assuming that factor (11) should not have been considered at all, the defendant would be unable to establish prejudice. The trial court made no specific references to factor (11), and the record does not indicate that the trial court otherwise "placed significant weight on the matter in determining the appropriate sentence." *People v. Reed*, 376 Ill. App. 3d 121, 129 (2007).

¶ 57                     Uncharged Criminal Conduct

¶ 58    The defendant's final argument on appeal is that the trial court erred in considering the evidence that he had committed criminal offenses in addition to those that were specifically charged. In support of this claim, the defendant maintains that the court should not have considered the photographs of the stolen property that had been found during the course of the investigation, that the court should not have considered Lybarger's testimony that the number of reported business burglaries in Edwardsville had decreased following the defendant's arrest, and that the court should not have considered Bauer's testimony that nine stolen guns were ultimately recovered. We find that these arguments are forfeited and are otherwise without merit.

¶ 59    A defendant's failure to object to evidence or arguments offered by the State at his sentencing hearing waives any objection thereto on appeal. See *People v. Gutirrez*, 205 Ill. App. 3d 231, 266 (1990); see also *People v. Woods*, 214 Ill. 2d 455, 475 (2005) ("A defendant forfeits

21

any issue as to the impropriety of the evidence if he procures, invites, or acquiesces in the admission of that evidence."). Here, the evidence at the sentencing hearing was essentially uncontested, and the defendant did not object to the introduction of any of the evidence that he now argues should not have been considered. We thus conclude that under principles of waiver and invited error, the defendant has forfeited plain-error review of his arguments regarding the evidence of his uncharged criminal conduct. See *Smith*, 2019 IL App (1st) 161246, ¶ 51; *Harding*, 2012 IL App (2d) 101011, ¶ 17. Moreover, forfeiture aside, the defendant's claims of prejudice are entirely speculative, and he is again unable to demonstrate that his sentence was based on improper considerations.

¶ 60    As noted, the State's exhibits included numerous photographs of stolen property that was found during the course of the investigation. Many of the photographs were close-ups used to identify specific property associated with specific burglaries, while others showed additional items in the background or foreground, such as a fire extinguisher hanging on a basement wall. The defendant argues that the photos should not have been considered because they included items of property that lawfully belonged to him. It was never suggested, however, that all of the property depicted in all of the photos was stolen, and nothing indicates that the trial court concluded that it was. We thus presume that the trial court only considered the property that had been particularly identified as stolen. *People v. Ayala*, 386 Ill. App. 3d 912, 920 (2008) ("It is presumed that the trial court considers only competent evidence in sentencing."). We further note that to the extent that the defendant suggests that the photographs tended to exaggerate the extent of his crimes, the trial court heard testimony that after the searches were conducted, the defendant and his girlfriend had both turned over additional items that had not previously been

discovered. Moreover, Bauer estimated that thousands of items of stolen property had ultimately been seized.

¶ 61    The defendant next argues that the trial court should not have considered Bauer's testimony that nine stolen firearms were found during the course of the investigation. The defendant notes that he was only charged with possessing seven stolen firearms and that Bauer's testimony was uncorroborated. It is well established that evidence showing a defendant's commission of other crimes or bad acts is admissible at a sentencing hearing even though the defendant was not prosecuted or convicted for such conduct. *People v. Edgeston*, 157 Ill. 2d 201, 246 (1993). The only requirement for the admission of such evidence is that it be relevant and reliable, "as determined by the trial court within its sound discretion." *People v. Foster*, 119 Ill. 2d 69, 96 (1987). Here, to the extent that the trial court considered Bauer's testimony that a total of nine stolen firearms were recovered, we cannot conclude that the trial court abused its discretion in crediting his testimony. "The determination of the credibility of the witnesses is strictly within the purview of the trier of fact" (*People v. Llanos*, 288 Ill. App. 3d 592, 597 (1997)), and to the extent that the defendant suggests that Bauer perjured himself, we find that the disparagement is unwarranted.

¶ 62    The defendant lastly argues that the trial court should not have considered Lybarger's testimony that the annual number of reported business burglaries in Edwardsville had decreased following the defendant's arrest. The defendant maintains that it is "illogical" to infer that the decrease was "solely" attributable to the defendant's apprehension. The State did not claim or argue that the decrease was solely attributable to the defendant's apprehension, however, and the trial court did not reference the decrease when imposing sentence. As a result, we cannot conclude that the court drew such an inference. See *People v. Harrell*, 104 Ill. App. 3d 138, 143

23

(1982) (noting that a reviewing court will not presume the existence of an alleged error which is not affirmatively shown of record). As the State notes on appeal, to demonstrate error, the defendant must affirmatively establish that his sentence was based on improper considerations (*People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49), and under the circumstances, he is again unable to do so.

¶ 63   As an aside, we note that we would find no abuse of discretion with respect to a finding that the cited decrease in reported business burglaries was partially attributable to the defendant's arrest, assuming that the trial court made such a finding. Tharp testified that the defendant had been committing burglaries in Madison County for at least 15 years and that a total of 9 residential burglaries and "[w]ell over 30" business burglaries had ultimately been linked to the defendant. The evidence before the trial court thus established that the defendant was a serial burglar who frequently targeted businesses in Edwardsville. Lybarger testified that there had been a notable decrease in the number of reported business burglaries in Edwardsville in the years immediately following the defendant's arrest. Under the circumstances, it would have been reasonable to conclude that the cited decrease was partially attributable to the fact that the defendant was no longer criminally active. See *Hartness v. Ruzich*, 155 Ill. App. 3d 878, 883 (1987) ("The sole limitation on the use of circumstantial evidence is that the inferences drawn therefrom must be reasonable.").

¶ 64   Principles of waiver and estoppel aside, the defendant is unable to affirmatively establish error, let alone plain error. Despite the defendant's claims to the contrary, the record supports a finding that he received a fair sentencing hearing and that his sentence was not based on improper considerations.

¶ 65   We lastly note that the defendant's appeal initially included a *Krankel* claim (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) that he subsequently withdrew in light of our supreme court's recent decision in *People v. Bates*, 2019 IL 124143. As a result, we need not address it. See *People v. Grice*, 87 Ill. App. 3d 718, 724 (1980).

¶ 66                                    CONCLUSION

¶ 67   The defendant is unable to demonstrate that he was denied due process at his sentencing hearing. We accordingly affirm the trial court's judgment denying his motion to withdraw guilty plea.

¶ 68   Affirmed.